| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

Vincent Rizzuto,

                Petitioner,

– against –                      **MEMORANDUM & ORDER**

The United States of America         98-CR-581/16-CV-3557 (ERK)

                Respondent.

KORMAN, *J.*:

In the spring of 1995, Vincent Rizzuto "met with [Joseph] Scarpa in his car. While [they] were stopped at an intersection, [Rizzuto] shot him and . . . left the area." Plea Tr. 22, ECF No. 118. Nearly five years later, on January 3, 2000, Rizzuto pleaded guilty to both racketeering and using and carrying a firearm in relation to a crime of violence. *See* Plea Tr. 20-21; Indictment 1-3, 7-8, ECF No. 117-1. Specifically, he admitted to murdering Scarpa, Plea Tr. 22, and using and carrying a firearm in relation to that murder in violation of 18 U.S.C. § 924(c), Indictment 7-8; Plea Tr. 20. In accordance with his plea agreement, Rizzuto received a sentence of twenty-four years' incarceration, followed by five years' supervised release. Plea Tr. 17-18, 23; *see also* Pet. 1, ECF No. 111.

Section 924(c), under which Rizzuto was sentenced, imposes a mandatory minimum sentence if an individual "uses or carries a firearm" "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines "crime of violence" in two ways: either a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of

1

committing the offense." The former definition is often referred to as the "elements clause;" the latter, the "residual clause." *Cf. Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018).

Fifteen years into Rizzuto's sentence, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Johnson* held the similarly-worded residual clause of the Armed Career Criminal Act ("ACCA") unconstitutionally vague. *Id.* at 2561-63. *Johnson* was the first in a trilogy of cases that struck down similarly worded statutes, culminating in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), which held that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. Following *Johnson*, on June 22, 2016, Rizzuto filed a *pro se* habeas petition pursuant to 28 U.S.C. § 2255 seeking vacatur of his conviction under Section 924(c). *See* Pet. Although Rizzuto's petition was filed more than one year after his guilty plea, it was filed less than one year after "the date on which the right asserted was initially recognized by the Supreme Court," *i.e.*, one year after *Johnson* was decided, rendering his petition timely. 28 U.S.C. § 2255(f)(3). In his petition, Rizzuto asserts that the offense underlying his Section 924(c) conviction was a RICO violation, which is not a crime of violence. Pet. 4-5. He also claims that murder in aid of racketeering, as charged in the Indictment, "is not necessarily a 'crime of violence' under the '[elements] clause.'" *Id.*

## DISCUSSION

"A prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

Rizzuto's claim that "[t]he alleged 'crime of violence'" undergirding his Section 924(c) conviction "was a RICO violation" is simply inaccurate. As the Indictment makes clear, Rizzuto was charged with "knowingly and intentionally us[ing] and carry[ing] a firearm during and in relation to a crime of violence, to wit, the crime charged in Count Seven." Indictment 7-8. Count

Seven reads: "On or about March 20, 1995, . . . the defendant[] Vincent Rizzuto, Jr., . . . for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, did knowingly and intentionally murder Joseph Scarpa . . . in violation of Sections 125.25 and 20.00 of the New York Penal Law." *Id.* at 7. The underlying charge was not a RICO violation; rather, it was murder. Even if I were to consider the RICO violation as the underlying offense, "racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity." *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009). Accordingly, I would "look to the predicate offenses"—here, murder—"to determine whether a crime of violence is charged." *Id.* The sole question presented by this petition, then, is whether murder "in violation of Section[] 125.25 . . . of the New York Penal Law" qualifies as a crime of violence under the elements clause of Section 924(c).

"To determine whether a crime is a 'crime of violence' under § 924(c)(3)(A) [the elements clause], [the Second Circuit] appl[ies] the so-called 'categorical approach.'" *United States v. Hendricks*, 921 F.3d 320, 327 (2d Cir. 2019). This approach "evaluate[s] a prior conviction 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *United States v. Evans*, 924 F.3d 21, 25 (2d Cir. 2019) (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)). "In the event a statute criminalizes multiple acts in the alternative, thereby defining multiple crimes, it is considered 'divisible,'" and "the modified categorical approach" applies. *United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019). If a statute is divisible, "a court . . . look[s] to 'a limited class of documents,' such as 'the indictment, jury instructions, or plea agreement and colloquy' to determine which . . . alternative offense[] was the offense of conviction. The court . . . then return[s] to the categorical analysis" as it relates to the specific offense of conviction. *Id.* (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

3

Under Section 924(c), an offense categorically qualifies as a crime of violence if it has "as an element the use, attempted use, or threatened use of physical force against the person or property of another," regardless of whether physical force was used in a particular instance. 18 U.S.C. § 924(c)(3)(A); *see also United States v. Hill*, 890 F.3d 51, 56-57 (2d Cir. 2018). In this context, "physical force" means "force capable of causing physical pain or injury to another person." *United States v. Johnson*, 559 U.S. 133, 140 (2010); *see also Hill*, 890 F.3d at 58. The phrase "use . . . of physical force" "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (analyzing similar language in 18 U.S.C. § 16); *see also Davis*, 139 S. Ct. at 2329-30 (noting that Section 16 and Section 924(c)(3) appear to be used interchangeably throughout the federal criminal code). Nor is recklessness sufficient. *See Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003); *see also United States v. Castleman*, 572 U.S. 157, 169 n.8 (2014) (noting near unanimity among Courts of Appeals that "recklessness is not sufficient" to "constitute a 'use' of force"). In sum, to qualify as a crime of violence under Section 924(c), an offense must involve (1) intent and (2) force capable of causing physical pain or injury. *Cf. Stuckey v. United States*, 878 F.3d 62, 69 (2d Cir. 2017) (applying same requirements to ACCA predicate convictions).

New York Penal Law Section 125.25 defines "murder in the second degree." The statute provides for several different ways of committing murder. *See Santana-Felix v. Barr*, 924 F.3d 51, 56 (2d Cir. 2019). For example, subsection one defines murder as "caus[ing] the death of [another] person" "[w]ith intent to cause . . . death." N.Y. Penal Law § 125.25(1). But some subsections apply where, "[u]nder circumstances evincing a depraved indifference to human life," the defendant "recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person," *id.* § 125.25(2), (4), and others describe felony murder. *See id.* § 125.25(3), (5).

4

Because Section 125.25 plainly "criminalizes multiple acts in the alternative, thereby defining multiple crimes, it is considered 'divisible.'" *Moore*, 916 F.3d at 238; *see also* N.Y. Penal Law § 125.25 (using "or" between different subsections); *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d 84, 90 (2d Cir. 2009) ("alternative means of committing a violation . . . enumerated as discrete alternatives, either by use of disjunctives or subsections" is indicative of divisibility). To resolve which subsection of Section 125.25 applies here, I turn to the "limited class of documents" that may be considered in applying the modified categorical approach. *Mathis*, 136 S. Ct. at 2249.

Although the Indictment does not specify a particular subsection, it does state that Rizzuto "knowingly and intentionally murder[ed] Joseph Scarpa." Indictment 3, 7. During the plea colloquy, the relevant portions of the Indictment were read to Rizzuto. *See* Plea Tr. 9-10, 19. After being read the portions of the Indictment stating he intentionally murdered Scarpa, Rizzuto pleaded guilty to those counts. *See id.* at 20. Indeed, when asked to explain his conduct in his own words, Rizzuto replied "I did everything . . . I and certain other persons[] planned to meet with Scarpa. I met with Scarpa in his car. While we were stopped at an intersection, I shot him." *Id.* at 21-22.

Based on this colloquy, Rizzuto pleaded guilty to intentional murder, as codified in Section 125.25(1). *See Shepard v. United States*, 544 U.S. 13, 16 (2005) (holding that court may examine "transcript of plea colloquy[] and any explicit factual finding by the trial judge to which the defendant assented" in determining nature of conviction); *see also United States v. Moreno*, 821 F.3d 223, 228-29 (2d Cir. 2016) ("[F]actual admissions and judicial findings in the context of a guilty plea must be adopted or confirmed by the defendant to be considered in determining the nature of the defendant's crime by the modified categorical approach."). This distinguishes Rizzuto's case from *Akinsade v. Holder*, 678 F.3d 138, 141 (2d Cir. 2012), and *Wala v. Mukasey*, 511 F.3d 102, 103-04 (2d Cir. 2007). In both of those cases, the Second Circuit held that the

petitioner's intent could not be inferred from the plea colloquy because the allocution only discussed conduct, not intent. *See Akinsade*, 678 F.3d at 145-46; *Wala*, 511 F.3d at 109. But here, Rizzuto agreed that he intentionally killed Scarpa. Moreover, unlike *Moreno*, where the defendant "was never asked to confirm the factual basis for his plea," 821 F.3d at 229, Rizzuto affirmatively stated that he understood the charges, "did everything" contained in the relevant counts, and "shot [Scarpa]." Plea Tr. 19-22.

Section 125.25(1) plainly falls within the definition of a "crime of violence" laid out in Section 924(c)(3)(A). As to the intent requirement, the statute requires "intent to cause the death of another person." N.Y. Penal Law § 125.25. And intentionally "caus[ing] the death of [another] person" invariably involves "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140 (2010). *See also id.* at 140-41 (citing Webster's New International Dictionary 1188 (2d ed. 1954) (referring to "murder" as an example of a "crime characterized by extreme physical force" in its definition of "violent felony")); *United States v. Russell*, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018) (holding that Section 125.25(1) qualifies as a crime of violence under Section 924(c)(3)); *Bonilla v. United States*, 2017 WL 8813076, at *1 (E.D.N.Y. Aug. 23, 2017) ("Murder necessarily entails enough force to cause injury since there can be no greater injury than death.").

This conclusion finds further support in the notion that the categorical approach "requires more than the application of legal imagination to [the] . . . statute's language." *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

> As relevant here, there must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. To show that a particular reading of the statute is realistic, a defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy.

6

*Hill*, 890 F.3d at 56 (quoting *Duenas-Alvarez*, 549 U.S. at 193). Rizzuto offers no real-world examples where murder under Section 125.25 would not satisfy the elements clause.

In sum, Rizzuto's Section 924(c) conviction rested upon New York Penal Law Section 125.25(1). That subsection is categorically a crime of violence under the elements clause of Section 924(c)(3)(A). Thus, even though the Supreme Court has deemed Section 924(c)(3)(B) unconstitutionally vague, Rizzuto's conviction stands.

## CONCLUSION

Rizzuto's motion to vacate under 28 U.S.C. § 2255 is denied.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
July 17, 2019

Edward R. Korman
United States District Judge